**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**EXXON CORPORATION, Defendant.**

Nos. 3:95–CV–1311–H, CA–3:95–CV–2537–H.

United States District Court, N.D. Texas, Dallas Division.

Oct. 30, 2000.

Katherine Elizabeth Bissell, Jeffrey Charles Bannon, Toby W Costas, Sidney Chesnin, Robert A Canino, Jr, Chrys Meador, Carla J Vogel, Sonji Dyer, Devika S Dubey, Equal Employment Opportunity Commission, Dallas, TX, Ann Elizabeth Reesman, Ellen Duffy McKay, McGuiness & Williams, Washington, DC, for E.E.O.C.

Peter Bennett, Bennett & Associates, Portland, ME, Donald J Logan, Murphy Logan Bardwell & Day, Napa, CA, John Marshall True, III, Marcie Ellen Berman, Rudy Exelrod Zieff & True, San Francisco, CA, Kathleen A Herdell, Law Office of Kathleen Herdell, Saint Helena, CA, for Allen Hartman, Alfred Trott.

William C. Strock, Haynes & Boone, Dallas, TX, Sarah Ruth Saldana, Ronald L Palmer, Baker Botts, Dallas, TX, Felicity A Fowler, Haynes & Boone, Houston, TX, Lori E Romley, Douglas Dexter, O'Melveny & Myers, San Francisco, CA, Nicholas Vincent, Douglas Bernard Neagli, Houston, TX, Christopher G Bell, Jackson Lewis Schnitzler & Krupman, Minneapolis, MN, for Exxon Corp.

William C Strock, Haynes & Boone, Dallas, TX, James Severson, Cynthia Jane Woolley, McCutchen Doyle Brown & Eversen, San Francisco, CA, Ulrico S Rosales, McCutchen Doyle Brown & Enersen, Palo Alto, CA, for Seariuver Maritime Financial Holdings, Inc.

Jennifer Judin, Van Wey & Johnson, Dallas, TX, for Richard J. Marque, Mark J. Cormier.

Thomas Millet, Daniel Bensing, U.S. Dept of Justice, Civil Division, Washington, DC, for U.S. Dept. of Justice.

Ann Elizabeth Reesman, Ellen Duffy McKay, McGuiness & Williams, Washington, DC, for Equal Employment Advisory Counsel.

## MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are the Findings. Conclusions, and Recommendation ("Recommendation") of the United States Magistrate Judge, filed September 11, 2000; Plaintiff Equal Employment Opportunity Commission's ("EEOC") Objections, filed October 4, 2000; and Defendant Exxon Corporation's Response to Plaintiff EEOC's Objections, filed October 19, 2000.

This Court has made the *de novo* review required by 28 U.S.C. § 636(b)(1)(C).

It is apparent that the Magistrate Judge carefully reviewed the factual and procedural background of this case. It is also apparent that the Magistrate Judge thoroughly considered the legal authority relevant to the issues in the case. With compelling logic the Magistrate Judge determined, in her well-written Recommendation, that no genuine issue of material fact exists and that Defendant Exxon is entitled to judgment as a matter of law.

This Court has reviewed the Recommendation and Plaintiff EEOC's Objections and concludes that Plaintiff has not established any issue of material fact. This Court further concludes that Plaintiff has not advanced any supportable legal argument against the Magistrate Judge's Recommendation.

Accordingly, the Findings, Conclusions, and Recommendation of the Magistrate Judge are ADOPTED as the Findings and Conclusions of the Court. Plaintiff EEOC's Objections are OVERRULED.

Judgment will be entered accordingly.

SO ORDERED.

## *JUDGMENT*

This Judgment is entered pursuant to the Memorandum Opinion and Order filed October 30, 2000.

It is ORDERED, ADJUDGED, AND DECREED BY THE COURT that Plaintiff Equal Employment Opportunity Commission take nothing by its suit against Defendant Exxon Corporation, and that this suit be, and it is hereby, DISMISSED on the merits at Plaintiff's cost.

## *FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

BOYLE, United States Magistrate Judge.

Pursuant to the District Court's Order of Reference filed June 29, 2000, Defendant Exxon Corporation's **Motion for Summary Judgment,** filed June 29, 2000, has been referred to the undersigned Magistrate Judge for hearing, if necessary, and for recommendation. Having reviewed the pertinent pleadings ·and the evidence submitted therewith, this Court **recommends** that the motion be **GRANTED** for the reasons that follow.

---

1. The named defendants in this suit are Exxon Corporation and Seariver Maritime, Inc., formerly Exxon Shipping, which is a wholly-owned affiliate of Exxon Corporation. See Findings, Conclusions and Recommendation of the United States Magistrate Judge, filed Nov. 18, 1996 at 2 n. 2; See also Def.'s Appendix in Support of Mot. for Summ. J. ("Def.'s App."), Ex. 33 at 555–56 (*Cahill* Aff. at ¶¶ 2, 4). In 1999, Exxon Corporation merged with Mobil Corporation to form Exxon Mobil Corporation. See Def.'s App., Ex. 34 at 572 (*Rosa* Aff. at ¶ 11). For case of discussion, the defendants will be referred to as "Exxon."

## I. BACKGROUND

The Equal Employment Opportunity Commission ("EEOC") brought this action pursuant to the Americans With Disabilities Act ("ADA"), challenging the manner in which Exxon Corporation[1] treats rehabilitated substance abusers. The plaintiffs, represented by the EEOC, are all present or former employees of Exxon who, in the past, have been treated for drug or alcohol abuse. They contend that Exxon's drug and alcohol policy, which bars ·rehabilitated substance abusers from certain safety-sensitive jobs, violates the ADA. Exxon filed the instant summary judgment motion addressing the sole issue of whether the plaintiffs are "disabled" as defined under the ADA. Before turning to discuss this issue and the points raised by the parties in their briefs, the Court will review the factual and procedural background underlying this motion.

### A. Factual Background[2]

In the wee hours of March 24, 1989, a drunken Captain Joseph Hazelwood caused the *Exxon Valdez* supertanker to run aground on Bligh Reef, spilling eleven million gallons of oil into the waters of Prince William Sound, Alaska.[3] The accident, which captured national attention, cost Exxon more than eight billion dollars in clean-up costs, settlements, and outstanding judgments.[4] The *Valdez* disaster also resulted in the government's criminal indictment of Exxon for offenses related to the accident.[5] Within weeks after the mis-

---

2. The factual background is largely undisputed and was previously set forth in this Court's Findings, Conclusions and Recommendation ("Recommendation") filed on November 18, 1996. The following recitation is taken directly from that recommendation, and where they may be a dispute over a stated fact, the Court will so indicate.

3. Recommendation at 3.

4. Id.

5. Id.

hap, Exxon began the process of instituting a stiff new substance abuse policy aimed at eliminating another *Valdez* calamity.[6] In July 1989, Exxon formally adopted its "Statement of Policy Regarding Employee Alcohol and Drug Use,"[7] which barred all employees with "substance abuse problem[s]" from holding designated "safety-sensitive" positions.[8] In conjunction with its policy, Exxon designated approximately ten percent of its jobs as "safety-sensitive," affecting approximately 1500 positions.[9] Exxon instituted its policy in all of its regions and affiliates in the United States and it remains in full effect today.[10]

Under Exxon's substance abuse policy, employees who have participated in rehabilitation programs are considered to have a "substance abuse problem" and are, consequently, precluded from all of the designated jobs.[11] Exxon's policy does not require individualized assessments of each rehabilitated employee to determine their fitness for these positions. Rather, these employees are, without exception, precluded from the "safety-sensitive" jobs.[12] Exxon justifies its across-the-board policy by claiming that the inability to predict when a former substance abuser will relapse prevents it from employing any rehabilitated employee in a designated spot due to the attendant safety risk.[13] The safety risk, according to Exxon, was determined

by examining the nature of the jobs.[14] Exxon's official criteria for the safety-sensitive designations is in jobs where: (1) there is high exposure to catastrophic public, environmental, or employee incident; (2) the person in such position performs a key and direct role in the operating process where failure could cause a catastrophic incident; and (3) there is either no direct supervision or very limited supervision to provide an operational check.[15]

All of the plaintiffs in this case have been through substance abuse rehabilitation. As a consequence of their participation in rehabilitation programs, each has also been removed from or prevented from attaining one or more of Exxon's designated jobs. It is on this basis that they have filed suit against Exxon challenging its policy under the ADA. The procedural background of this case is next.

**B. Procedural Background**

On June 28, 1995, the EEOC filed this action against Exxon on behalf of plaintiffs Salvatore Filippone, Glenn Hale, and other similarly situated individuals who have undergone rehabilitation for past substance abuse and who are adversely affected by Exxon's policy.[16] On November 15, 1995, the District Court consolidated a similar complaint filed against Exxon and Seariver Maritime, Inc. by plaintiffs Allen Hartman and Alfred Trott.[17] Hartman and Trott

---

6. Id.

7. Throughout these findings the policy will be referred to as Exxon's "substance abuse policy" or simply Exxon's "policy."

8. The policy provides:
 No employee with alcohol or drug dependency will be terminated due to the request for help with overcoming that dependency or because of involvement in a rehabilitation effort. However, an employee who has had or is found to have a substance abuse problem will not be permitted to work in designated positions identified by management as being critical to the safety and well-being of employees, the public, or the Corporation.... Def.'s App. at 541, Ex. 29.

9. Recommendation at 3–4.

10. Id. at 4.

11. Id.

12. Id.

13. Id. at 4–5.

14. Id. at 5.

15. Id.

16. See Complaint, filed June 28, 1995.

17. See Order of Consolidation, filed November 15, 1995.

had filed suit in the Northern District of California in a case styled *Hartman & Trott v. Exxon Corp. and Sea River Maritime, Inc.*, C. 95–01617 MMC. In their complaint, they also challenged Exxon's substance abuse policy as applied to rehabilitated employees. On June 25, 1996, the District Court granted the motion of plaintiffs Mark Cormier and Richard Marque to intervene in the EEOC's action.[18] Cormier and Marque, as with the other plaintiffs, complain of Exxon's substance abuse policy as applied to rehabilitated substance abusers.

On August 9, 1996, the plaintiffs and Exxon filed cross-motions for summary judgment which were referred to this Court for recommendation. Those motions focused on two issues: (1) whether the plaintiffs are "disabled" as defined under the ADA; and (2) whether Exxon's policy on its face violates the ADA. This Court entered her Findings, Conclusions and Recommendation on November 18, 1996. On May 13, 1997, the District Court adopted the recommendation with respect to the facial validity of Exxon's policy, but refused the recommendation as to whether the plaintiffs are "disabled" under the ADA.[19] The District Court reasoned that the issue of whether the plaintiffs are "disabled" was not properly before the Court as both parties had been directed to limit their summary judgment briefing solely to the facial validity of Exxon's policy.[20]

Based on recent developments in the relevant case authority and following additional discovery, Exxon obtained permission from the District Court to file the instant summary judgment motion focusing on whether the plaintiffs are "disabled" under the ADA.[21] Exxon filed the motion and its appendix of evidence on June 29, 2000. On July 19, 2000, the EEOC filed its responsive brief and appendix. Exxon filed a reply brief and supplemental appendix on August 3, 2000. Before turning to the arguments raised in the parties' briefing, the Court will review the summary judgment principles governing its analysis.

## II. SUMMARY JUDGMENT STANDARDS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only disputes about those facts will preclude the granting of summary judgment. *Id.* In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir.1990). If the non-movant bears the burden of proof at trial, the movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Id.; Little*, 37 F.3d at 1075.

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (*quoting Matsushita Elec. Indus. Co. v. Zenith Ra-*

---

**18.** See Order dated June 25, 1996.

**19.** See Memorandum Opinion and Order, filed May 13, 1997 at 11–12.

**20.** Id.

**21.** See Order filed May 30, 2000.

*dio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Rather, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.'*" *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (*quoting* FED. R. CIV. P. 56(e)). In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. With these standards as a guide, the Court turns to Exxon's motion for summary judgment.

### III. ANALYSIS

Exxon moves for summary judgment, contending that the plaintiffs are not "disabled" within the meaning of the ADA. Because the EEOC represents many plaintiffs in this suit, the Court will first identify which ones will be included in its analysis of whether they can establish a disability so as to withstand Exxon's motion.

Exxon supports its motion with evidence pertaining generally to all the plaintiffs and specifically to sixteen named plaintiffs.[22] The EEOC responds with the declarations of seven of those named plaintiffs and two former Mobil employees, John Dahl and Samuel Turkington, who became affected by Exxon's policy when Exxon

merged with Mobil in 1999.[23] Exxon objects to the Dahl and Turkington declarations based on the District Court's prior decision not to allow employees of the Mobil work force to be added as plaintiffs in this litigation.[24] At a conference held between the District Court and the parties' counsel on May 25, 2000, the District Court expressly declined to open this litigation to include the claims of affected former Mobil employees.[25] Consequently, the Court finds that the Dahl and Turkington are not proper plaintiffs in this case and, therefore, neither they nor their declarations will be included in the Court's analysis.

Although the EEOC counters Exxon's motion with evidence regarding some, but not all, of the sixteen named plaintiffs, the Court will, in an effort to provide the broadest overview possible of the record evidence of disability, extend its analysis to the sixteen named plaintiffs and to Exxon's evidence pertaining generally to all of the plaintiffs.[26]

### A. *"Disability" Under the ADA*

#### 1. *Disability*

The ADA prohibits employment discrimination against any qualified individual with a *disability*. 42 U.S.C. § 12101 *et seq.* (West 1995). This includes action taken with regard to hiring, advancement, discharge, compensation, training and other terms and conditions of employment. 42 U.S.C. § 12112 (West 1995).

---

**22.** See Def.'s Br. at 11, 19 and Ex. 1. This figure consists of the six plaintiffs covered in the parties' 1996 cross-motions for summary judgment and ten additional plaintiffs identified by the EEOC in 1997 as potential trial witnesses. See Def.'s App. at 539–40, Ex. 28; Pl.'s Resp. to Def.'s Mot. for Summ. J. at attached appendix ("Pl.'s Resp., App.") at 1–2, Ex. 1.

**23.** See Pl.'s App. at 205–228, Exs. 18–25; Ex. 20 (*Dahl* Decl.), Ex. 25 (*Turkington* Decl.).

**24.** Def.'s Reply at 15.

**25.** See Def.'s Supplemental App. in Support of Def.'s Reply at 596–98, Ex. 2 (Transcript of May 25, 2000 hearing at 13–15).

**26.** The Court is also mindful of the fact that four of these named plaintiffs, Hartman, Trott, Marque, and Cormier have been dismissed from this case. See Orders, filed December 9, 1997 and June 22, 1998. While the dismissals prohibit any individual relief for these plaintiffs, the evidence as to whether any of them are disabled, in this particular case, remains relevant. Accordingly, these four plaintiffs will be included in the Court's analysis.

As a threshold requirement, a plaintiff seeking relief under the ADA must establish that he has a disability protected by the statute. *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir.1999); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996). The plaintiff must meet this burden in order to survive a summary judgment motion. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1121 (5th Cir.1998); *Ray v. Glidden Co.*, 85 F.3d 227, 228 (5th Cir.1996)(per curiam). The ADA defines disability as (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2) (West 1995). Although the ADA does not define the terms "impairment," "substantially limits," or "major life activity," regulations promulgated by the EEOC under the ADA provide guidance.[27]

### 2. Impairment

 A physical or mental impairment is any physiological disorder or condition, cosmetic disfigurement, anatomical loss, or any mental or psychological disorder. 29 C.F.R.App. § 1630.2(h) (1995). Environmental, cultural, and economic characteristics are not impairments; nor are physical or mental characteristics that are not the result of a physiological or psychological disorder, such as eye color or temperament. *Id.* Current substance abuse is not a protected impairment under the ADA. 42 U.S.C. § 12114; *Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 853 (5th Cir.1999). Similarly, rehabilitated substance abusers, including alcoholics, are not *per se* disabled. *Burch v. Coca–Cola Co.*, 119 F.3d 305, 316 (5th Cir.1997); *See Zenor*, 176 F.3d at 859 (noting that per-

ceived substance abusers must show that their addiction is regarded as substantially limiting a major life activity). Rather, plaintiffs alleging such an impairment must prove that it amounts to a "disability" as that term is defined under the ADA; i.e., a physical or mental impairment that substantially limits a major life activity. *See generally Burch*, 119 F.3d at 315–19 and n. 10.

### 3. Substantially Limited In Major Life Activities

Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). An impairment substantially limits a major life activity if the individual is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(i), (ii). Factors that provide guidance in, determining whether an impairment substantially limits a major life activity include (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of, or resulting from, the impairment. 29 C.F.R. § 1630.2(j)(2)(i), (ii), (iii).

In this case, the EEOC alleges that the plaintiffs' prior substance abuse substan-

---

**27.** The Supreme Court in *Sutton v. United Air Lines, Inc.* questioned the validity of the EEOC's regulations, noting that no agency had been given authority to interpret the term "disability." *Sutton*, 527 U.S. 471, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999). The Court, however, passed on the issue of what deference, if any, they were due since both parties accepted the validity of the regulations and determining their validity was unnecessary to decide the case. *Id.* The same applies here, so this Court will not discuss the validity of or the deference to be accorded the EEOC's regulations.

tially limited the major life activities of remembering, thinking, concentrating, sleeping, caring for one's self, interacting with others, eating, and the "awareness associated with consciousness"[28] Also at issue is the major life activity of working.[29]

### 4. Substantially Limited in Working

In *Sutton,* the Supreme Court expressed concern as to whether working is a major life activity. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491–92, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450. Nonetheless, the Fifth Circuit has, subsequent to *Sutton,* concluded that based on the plain text of the ADA, working is indeed a major life activity. *Equal Employment Opportunity Comm'n v. R.J. Gallagher,* 181 F.3d 645, 654 & n. 5 (5th Cir.1999).

The major life activity of working is considered only when there is no showing of a substantial limitation in any of the other major life activities. 29 C.F.R.App. § 1630.2(j); *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 n. 10 (5th Cir. 1995). An individual is substantially limited in working if he is:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). The Court may consider the following factors to determine whether an individual is substantially limited in the activity of working:

> (1) the geographical area to which the individual has reasonable access;
>
> (2) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographi-

cal area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

> (3) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R.App. § 1630.2(j).

### B. "Record of" or "Regarded as" Substantially Limited In Work

Both sides to this dispute agree that none of the plaintiffs *currently* have an impairment that substantially limits a major life activity. What plaintiffs do assert is that Exxon's substance abuse policy *treats* employees who participated in a rehabilitation program as if they are disabled with respect to their ability to perform certain designated jobs. Specifically, plaintiffs argue that, based on their prior substance abuse and rehabilitation histories, they are protected by the ADA under the "record of" and "regarded as" prongs of the definition of disability. The Court, therefore, must determine: (1) whether Exxon, by relying on the plaintiffs' rehabilitation history, discriminated against them on the basis of a *record* of a disability, and/or (2) whether Exxon, by determining that employees who have participated in rehabilitation programs are unfit for designated positions, *regarded* the plaintiffs as disabled.

### I. Record of Disability

■ While the ADA does not define "record of" a disability, the regulations provide, "[h]as a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29

---

**28.** Pl.'s Resp. at 8–10.

**29.** Id. at 15–22.

C.F.R. § 1630.2(k). Under this prong for the ADA's definition of disability, an individual is protected if an employer relies on a record which indicates that the individual has or has had a substantially limiting impairment. 29 C.F.R.App. § 1630.2(k). Such a record may include educational, medical, or employment records. Id. The purpose of this provision is to protect individuals from discrimination based on a history of disability or because they have been misclassified as disabled. Id. Therefore, it applies only to those individuals who have been classified or misclassified as having a substantially limiting impairment. See 29 C.F.R.App. § 1630.2(k); *Sherrod*, 132 F.3d at 1120–21 (**plaintiff's record of impairment failed to show a substantially limiting impairment to satisfy definition of disability**); *Ray*, 85 F.3d at 229 (same).

In addition to showing a substantially limiting impairment, the record of the disability must be relied on by the employer as a basis for discriminating against the individual. See 29 C.F.R.App. § 1630.2(k). Thus, the employer must have some knowledge of the record establishing the disability. *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 510 n. 8 (7th Cir.1998); *See also Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1228–29 (11th Cir.1999); *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 961 (8th Cir.2000); *Anderson v. Gus Mayer Boston Store of Delaware*, 924 F.Supp. 763, 776–77 & nn. 33–34 (E.D.Tex.1996); *Phillips v. Wal-Mart Stores, Inc.*, 78 F.Supp.2d 1274, 1286–87 (S.D.Ala.1999); *But see Pace v. Paris Maintenance Co.*, 107 F.Supp.2d 251, 260–61 (S.D.N.Y.2000).

■ In this summary judgment context, the EEOC has failed to raise a genuine fact issue regarding the plaintiffs' disabled condition under this definition. Specifical-

ly, the EEOC has failed to establish that the information regarding their substance abuse histories constitutes a record of disability within the meaning of the Act, and that Exxon relied on that record in discriminating against them

The EEOC claims that the plaintiffs have a record of an impairment that substantially limits the major life activities of remembering, thinking, concentrating, sleeping, caring for one's self, interacting with others, eating, and the "awareness associated with consciousness."[30] Their primary evidence on this issue consists of declarations from seven of the plaintiffs wherein each plaintiff recalls how their prior substance abuse interfered with their personal lives, detailing incidences from drinking binges, blackouts, loss of memory and consciousness, difficulty in thinking and concentrating, difficulty in interacting with others, difficulty in eating and sleeping, to the physical pains of withdrawal from substance abuse.[31] Even assuming these effects of the plaintiffs' prior substance abuse constitute substantial limitations on major life activities,[32] their declarations, the Court finds, do not constitute a record of a disability as contemplated by the ADA, the regulations, and the case authority. The plaintiffs' declarations merely recount their past problems with substance abuse, and in no way suggest the existence of a "record" relied upon by Exxon that classifies or misclassifies these plaintiffs as having a substantially limiting impairment. *See Taylor*, 214 F.3d at 961 ("In order to have a record of a disability, an employee's *documentation must show* that she has a history of or has been subject to misclassification as disabled.")(emphasis added and internal quotations omitted); *See also Hilburn*, 181 F.3d at 1229 (plaintiff furnished no evi-

---

**30.** Pl.'s Resp. at 8–10. There is no allegation that the plaintiffs have a record of an impairment substantially limiting their ability to work. Id.

**31.** Id.; Pl.'s App. at 205–228, Exs. 18–25.

**32.** The Fifth Circuit has declined to recognize "awareness" per se as a major life activity. *Deas v. River West, L.P.*, 152 F.3d 471, 479 n. 18 (5th Cir.1998).

dence that employer had any record of a substantially limiting impairment); *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1087–88 (10th Cir.1999). The EEOC has failed to provide any medical, educational, or employment records as mentioned in the regulations. See 29 C.F.R.App. § 1630.2(k). Nor are there any treatment, counseling or hospitalization records currently before the Court. In short, the undisputed evidence establishes that these plaintiffs were affected by Exxon's policy based solely on their past participation in some sort of rehabilitation program for substance abuse. As noted earlier, alcoholism and substance abuse are not *per se* disabilities. *See Burch,* 119 F.3d at 316; *Zenor,* 176 F.3d at 859. And hospitalization, inpatient counseling, or record of a mere medical diagnosis alone does not establish a substantially limiting impairment. *See Gallagher,* 181 F.3d at 655; *Demming v. Housing and Redevelopment Auth.,* 66 F.3d 950, 955 (8th Cir.1995); *Byrne v. Bd. of Educ.,* 979 F.2d 560, 566 (7th Cir.1992).

The Court should not be misunderstood to say that declarations are always insufficient to establish a record of a disability. Rather, the plaintiffs' reliance on these declarations is misplaced. The declarations were created only recently after the filing of Exxon's summary judgment motion.[33] They cannot, therefore, constitute a record of a disability that was relied on by Exxon in implementing its substance abuse policy. The affidavits contain nothing to indicate that Exxon was aware of the effects of the plaintiffs' prior substance abuse problems, or that Exxon was aware of anything beyond the mere fact that each plaintiff had participated in some substance abuse rehabilitation.[34] And the

plaintiffs' proof fails to show that such rehabilitation constitutes an impairment that substantially limits any major life activity. Consequently, the EEOC has failed to meet its burden of establishing that the plaintiffs are disabled under the "record of" prong of the ADA's definition of disability and therefore are unable to invoke its protection on this ground.[35]

### 2. *Regarded as Disabled*

The plaintiffs' stronger argument for coverage under the ADA, requiring a more detailed analysis, is that Exxon regards rehabilitated individuals as substantially limited in their ability to work. Exxon first complains that the EEOC has failed to allege this theory of recovery.[36] The Court disagrees. The EEOC alleged in its complaint that Exxon discriminated against its employees on the basis of a disability in violation of Title I of the ADA.[37] While the definition of "disability," which includes the "regarded as" prong, is found in the ADA's generally applicable provisions rather than in Title I,[38] the term "disability" is used throughout Title I. Additionally, in connection with the 1996 cross-motions for summary judgment, both parties briefed the issue of whether Exxon regards the plaintiffs as disabled. Given the liberal construction of complaints under the Federal Rules of Civil Procedure and Exxon's prior briefing of this issue, the Court finds that Exxon had sufficient notice that the plaintiffs' case included a claim based on the "regarded as" prong of the ADA's disability definition. The Court, therefore, will address the merits of this claim.

---

**33.** See Pl.'s App. at 205–228, Exs. 18–25.

**34.** See id.

**35.** Although the plaintiffs have failed to establish that their substance abuse history constitutes a record of a disabling impairment, the existence of a record of rehabilitation remains relevant in the Court's analysis of whether Exxon regarded the plaintiffs as disabled.

**36.** Def.'s Br. at 12.

**37.** Pl.'s Compl. at ¶ 7.

**38.** See 42 U.S.C. §§ 12101–12102 (West 1995).

Under the "regarded as" section of the ADA's definition of disability, an individual is protected whether or not the individual actually has a substantially limiting impairment. 42 U.S.C. § 12102(2); See 29 C.F.R. § 1630.2(*l*). This third prong of the definition provides coverage for individuals who are perceived or treated as substantially limited in a major life activity by their employers. *See Zenor*, 176 F.3d at 859 (citing 42 U.S.C. § 12102(C)). The Supreme Court discussed the purpose behind this definition of disability in *School Board of Nassau County v. Airline*. The Court explained,

By amending the definition of "handicapped individual" to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.

*Airline*, 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)(discussing Rehabilitation Act).

In *Sutton*, the Supreme Court explained two ways in which a plaintiff may fall under the statutory definition of "regarded as" disabled:

(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impair-

ment when, in fact, the impairment is not so limiting.

*Sutton*, 527 U.S. at 486–92, 119 S.Ct. at 2149–50; *See also Gallagher*, 181 F.3d at 656. The EEOC appears to be relying on the second alternative above based on its argument that the plaintiffs are regarded as disabled because of their prior substance abuse problems which do not presently affect them.

■■■ As suggested by *Sutton*, the "regarded as" inquiry focuses on the state of mind and perception of the employer. *See also Deas*, 152 F.3d at 476 n. 9. As noted, an employer is prohibited under this section from making an employment decision based on "common attitudinal barriers" or stereotypes about disabilities. 29 C.F.R.App. § 1630.2(*l*). Simple awareness of an impairment, however, real or perceived, is insufficient to prove that the employer regarded the employee as disabled. *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3rd Cir.1996)(citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994)).

■■■ In this case the analysis turns on whether Exxon regards the plaintiffs as substantially limited in working.[39] An employer *regards* an employee as substantially limited in working if the employer perceives the employee as having an impairment that would generally foreclose the individual from the type of employment involved. *See Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192–93 (5th Cir.1996). The inquiry is a highly individualized one focusing on "whether the particular impairment constitutes for the particular person a significant barrier to employment." *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 488 (8th Cir.1996)(other citations omitted). The existence of a job restriction does not, standing alone, establish that en employer regards an em-

---

**39.** There is no evidence offered by the EEOC that Exxon regarded any of the plaintiffs as substantially limited in any major life activity other than working. Accordingly, the Court will confine its analysis to whether the plaintiffs were regarded as substantially limited in working.

ployee as substantially limited in the major life activity of working. *Sutton,* 527 U.S. at 489, 119 S.Ct. at 2150; *Murphy v. United Parcel Serv.,* 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999); *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

Factors which should be considered in determining whether an impairment is regarded as substantially limiting an individual's employment include the "number and type of jobs from which the individual [is] disqualified, the geographic area to which he has reasonable access, and the individual's employment qualifications." *Chandler,* 2 F.3d at 1392; *See Sutton,* 527 U.S. at 492, 119 S.Ct. at 2151; See also 29 C.F.R. § 1630.2(j)(3)(ii)(A), (B), (C). As noted in a previous section, an employee is substantially limited in working if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

The Supreme Court recognized in *Sutton,* that the term "substantially limits" suggests "considerable" or "specified to a large degree." *Sutton,* 527 U.S. at 491, 119 S.Ct. at 2150 (citing Webster's Third New International Dictionary 2280 (1976)). And the EEOC has defined the term to mean "unable to perform" or "significantly restricted." *Id.,* 527 U.S. at 491–493, 119 S.Ct. at 2150–51 (citing 29 C.F.R. § 1630.2(j)(1)(i), (ii) (1998)). Thus, "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Id.,* 527 U.S. at 492–93, 119 S.Ct. at 2151. After reviewing the regulations and these guiding principles, the Court went on to explain:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton,* 527 U.S. at 492–93, 119 S.Ct. at 2151.

The determination of whether an individual is substantially limited in working is to be made on an individualized, case-by-case basis. *Deas,* 152 F.3d at 478; *Zenor,* 176 F.3d at 860. The Court must undertake a meaningful analysis of the particular employee's situation, understanding at all times that "[f]undamentally, the ADA is concerned with preventing a person's real work opportunities." *Webb,* 94 F.3d at 488.

The burden of proving that he is or is regarded as substantially limited in working is squarely on the plaintiff. *Sherrod,* 132 F.3d at 1120. The case authority is replete with examples of courts granting summary judgment in favor of employers where the plaintiffs failed to produce record evidence on this issue. *See Deas,* 152 F.3d at 481–82 **(plaintiff failed to produce any evidence that employer perceived her to be incapable of performing a class or broad range of jobs);** *Sherrod,* 132 F.3d at 1120 **(plaintiff failed to present evidence of the number and types of jobs from which she is disqualified, or evidence that her training and skills limit her to jobs requiring heavy lifting);** *Ray,* 85 F.3d at 229–30 **(plaintiff did not indicate he was denied another job because of employer's perception and failed to counter defendant's evidence that no other jobs were available);** *Dutcher,* 53 F.3d at 727 **(plaintiff failed to present record evidence that she was substantially limited in performing a class of jobs);** *Sinkler v. Midwest Proper-*

*ty Management Ltd. Partnership*, 209 F.3d 678, 685–86 (7th Cir.2000)(plaintiff failed to present evidence that she was or that employer perceived her to be substantially limited in entire class or broad range of jobs); *Bolton v. Scrivner*, 36 F.3d 939, 944 (10th Cir.1994)(plaintiff failed to present evidence of his vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which he would also be disqualified); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506–07 (7th Cir.1998)(affirming summary judgment for employer to the extent of plaintiff's "regarded as" claim because plaintiff failed to show substantial limitation in a class or broad range of jobs); *Broussard v. Univ. of California*, 192 F.3d 1252, 1259 (9th Cir.1999)(same); *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir.1997)(plaintiff failed to offer relevant information to determine whether she was precluded from engaging in an entire class of jobs); *Swain v. Hillsborough Co. Sch. Bd.*, 146 F.3d 855, 858 (11th Cir.1998)(plaintiff failed to present evidence addressing the factors listed in the regulations); *Best v. Shell Oil Co.*, 910 F.Supp. 405, 411 (N.D.Ill.1995)(plaintiff failed to adduce evidence of his training, his accessible geographical area, or the number and types of jobs demanding similar training from which plaintiff's perceived impairment would disqualify him); *McKay v. Toyota Motor Mfg. U.S.A., Inc.*, 878 F.Supp. 1012, 1015 (E.D.Ky.1995)(plaintiff failed to establish that she was significantly restricted in ability to perform a class or broad range of jobs); *Zarzycki v. United Tech. Corp.*, 30 F.Supp.2d 283, 291 (D.Conn.1998)(plaintiff failed to present evidence of the specific job market in his accessible geographic area or of the number of jobs from which he was ex-

cluded because of his impairment); *See also Zenor*, 176 F.3d at 861 (affirming judgment as a matter of law for employer when plaintiff failed to produce any evidence that employer perceived him to be incapable of performing a class or broad range of jobs); *Bridges v. City of Bossier*, 92 F.3d 329, 333–35 (5th Cir.1996)(although not a summary judgment case, court found plaintiff failed to produce evidence that his limitation, as perceived by the employer, precluded him from all jobs involving routine exposure to extreme trauma). With these standards in mind, the Court turns to its task of determining whether Exxon regarded any of the plaintiffs as substantially limited in working.

Exxon first urges the Court to analyze the "regarded as" issue utilizing a generalized approach rather than the typical individualized assessment as specified in the ADA and the case authority. Def.'s Br. at 2, 13–14. Exxon supports this proposition by alleging that it treated all the employees the same for all relevant purposes in that each employee affected by Exxon's policy was offered alternative placement positions with Exxon following a review of the employee's skills and qualifications. Id. Although the fact that Exxon offered affected employees alternative positions is relevant to the ultimate question of whether they regarded the plaintiffs as disabled,[40] it does not justify a generalized analysis of whether these plaintiffs are substantially limited in working when the ADA, the regulations, and the case authority clearly call for an individualized analysis of each plaintiff's work opportunities. *See Sutton*, 527 U.S. at 483, 119 S.Ct. at 2147; *Deas*, 152 F.3d at 478; See 29 C.F.R.App. § 1630.2(j). Because of the individualized approach advised by the regulations and the cases, the Court will turn to review the relevant facts with regard to each plaintiff.

**40.** Exxon's argument on this point is addressed later in this recommendation. See infra, pp. 1006–08, 1012–13.

## Michael Bigler [41]

Michael Bigler began working for Exxon in 1978.[42] He was working as an Operator at an offshore platform in 1990 when Exxon instituted its substance abuse policy.[43] Under the policy, the Operator position at Bigler's location was a designated position, therefore, he was moved to a different platform, but he retained the position of Operator at the new location.[44] In the mid–1990's, Bigler was next in line for a Senior Operator position and applied for that position in 1997.[45] However, because Senior Operator is a designated position under Exxon's policy, Bigler was ineligible.[46] Bigler remains employed at Exxon as an I & E technician and currently performs relief work for senior I & E jobs and nondesignated operator jobs.[47]

## Dale Corcoran

Dale Corcoran has worked for Exxon for 16 years and is currently employed at its Billings, Montana refinery as a Process Operator, a nondesignated position.[48] Corcoran alleges that he is qualified for the designated position of Control Board Operator, but he is prohibited from holding that position because of Exxon's policy.[49] According to Corcoran, Exxon has designated, pursuant to its policy, all of the field positions for which he has been in training over the past 16 years, including the positions of Control Board Operator,

Shift Superintendent, Section Supervisor, and Control Center Supervisor.[50] Having been precluded from holding a Control Board Operator position, Corcoran cannot advance into the designated positions of Shift Supervisor, Section Supervisor, and Control Center Supervisor, which he seeks to occupy.[51]

## Salvatore Filippone

Salvatore Filippone began working for Exxon in 1983 as a flight engineer.[52] Filippone served as a flight engineer, a designated position, for 11 years before being reassigned to the nondesignated position of Airframe and Power Plant Mechanic.[53] As a mechanic, Filippone inspected, maintained and repaired aircraft. He alleges that prior to being removed from the flight engineer position, he was qualified to perform the flight engineer, Director of Maintenance and Chief Mechanic positions.[54] However, due to Exxon's policy, he is ineligible for these designated positions. Filippone is licensed by the FAA as a certified aircraft mechanic and holds an FAA inspector authorization and a commercial pilot's license.[55] According to Exxon, Filippone has taken disability retirement unrelated to his claim in this case.[56]

## Glenn Hale

In 1988, Exxon hired Glenn Hale as a flight engineer.[57] In that position, his job

41. The relevant facts pertaining to plaintiffs Michael Bigler through Alfred Trott are taken primarily from their declarations submitted with the EEOC's summary judgment response.

42. Pl.'s App at 205, Ex. 18 (*Bigler* Decl.).

43. Id.

44. Id.

45. Id.

46. Id.

47. Def.'s App. at 36–37A, Ex. 2 (*Bigler* Depo.).

48. Pl.'s App. at 207, Ex. 19 (*Corcoran* Decl. at ¶¶ 2).

49. Id. (*Corcoran* Decl. at ¶ 3).

50. Id. at 208 (*Corcoran* Decl. at ¶ 5).

51. Id.

52. Id. at 212, Ex. 21 (*Filippone* Decl.)

53. Id.

54. Id. at 213.

55. Id. at 212, 214.

56. Def.'s Br., Ex. 1 at 9.

57. Pl.'s App. at 214A, Ex. 21A (*Hale* Decl.).

duties included providing maintenance, servicing and securing aircraft when away from home base.[58] In 1989, he informed a manager that he had participated in an employee assistance program for treatment of alcohol abuse.[59] Based on that disclosure, in 1994, he was removed from the designated flight engineer's position and reassigned to the nondesignated position of mechanic.[60] Because Hale was removed from the flight engineer position, he had no opportunity for advancement into the positions of Lead Mechanic and Director of Maintenance as they were also designated positions.[61] Since leaving his employment with Exxon, Hale has worked in three different capacities as an aircraft mechanic, inspector, and technical instructor.[62]

### Allen Hartman

Allen Hartman's substance abuse problems began when he was an adolescent, and he has been an active member of Alcoholics Anonymous ("AA") since that time.[63] In 1988, Exxon Shipping Company, now Seariver Maritime Financial Holdings, Inc. ("Seariver"), hired Hartman as an Able Seaman on its ocean-going fleet.[64] In 1989, after Exxon designated its ocean fleet mate positions, Hartman requested a transfer to Exxon's Tug and Barge Fleet.[65] Hartman subsequently learned that the mate positions on the tug fleet were also designated; nevertheless, he obtained his mate license in hopes of being considered for a mate position.[66] In 1992, Hartman was told that he would not be considered for a Second Mate position, and he would not be allowed to serve as a mate in a "step-up" position.[67] Due to Exxon's designation of its mate positions, there were no positions either in the ocean-going or inland fleets for which Hartman was eligible, thus, he was foreclosed from advancing to the positions of Third Mate, Second Mate, Chief Mate, and Master.[68] In 1993, Hartman resigned from Exxon and went to work for Sause Bros. Ocean Towing Co. as a mate.[69] He was subsequently promoted to Chief Mate at Sause Bros. and currently holds the position of Captain.[70]

### Richard Marque

Richard Marque has worked for Exxon for 24 years.[71] He began his employment as a Maintenance Specialist and was ultimately promoted to Senior Engineering Technician, both of which are nondesignated positions.[72] Marque asserts that he is qualified for the positions of Field Superintendent, Senior Field Superintendent and Field Foreman, but because of Exxon's policy, he cannot hold any of these positions nor provide relief work to the individuals in these jobs.[73] Marque is currently employed with Exxon in the nondesignated position of Technical Foreman Construction.[74]

### Alfred Trott

Alfred Trott has participated in Exxon's employee assistance program and has been

---

58. Id.

59. Id.

60. Id.

61. Id.

62. Def.'s App. at 190–93, Ex. 10 (*Hale* Depo.)

63. Pl.'s App. at 216, Ex. 22 (*Hartman* Decl. at ¶¶ 5, 7).

64. Id. (*Hartman* Decl. at ¶ 7).

65. Id. (*Hartman* Decl. at ¶ 12).

66. Id. at 217–18 (*Hartman* Decl. at ¶ 13).

67. Id. (*Hartman* Decl. at ¶ 14).

68. Id. at 219 (*Hartman* Decl. at ¶ 16).

69. Id. at 218 (*Hartman* Decl. at ¶ 14).

70. Id. (*Hartman* Decl. at ¶ 15).

71. Id. at 220, Ex. 23 (*Marque* Decl.).

72. Id.

73. Id.

74. Id.

attending AA meetings since 1988.[75] Exxon hired Trott in 1968 as a Refinery Technician.[76] He was promoted to a first line supervisor position as Control Supervisor in 1976, and by 1980, he was training for a "step-up" Shift Superintendent position.[77] In 1989, Exxon designated the positions of Refinery Manager, Shift Superintendent and Control Supervisor.[78] As a result, Trott was reassigned to the nondesignated position of laboratory supervisor.[79] Based on his reassignment pursuant to Exxon's policy, Trott has been precluded from the Control Supervisor, Shift Superintendent, and Refinery Manager positions, and he claims the effects of the reassignment have precluded him from other nondesignated positions as well.[80] Trott retired from Exxon in 1999.[81]

### Mark Cormier [82]

Exxon hired Cormier in 1981 as a maintenance specialist, and in 1985, he was promoted to Relief Operator.[83] In this capacity, he worked one day a week as a maintenance specialist, two days a week as an Operator, and two days a week as a Senior Operator.[84] Cormier entered an inpatient substance abuse rehabilitation program in 1989.[85] After Exxon designated the Senior Operator position, Cormier worked only as an Operator rather than as a Relief Operator.[86] The main differences in the positions are compensation and the location of the Operator position in a hydrogen sulfide environment.[87] In 1991, Cormier transferred to another Exxon facility where the Senior Operator position was not designated and, therefore, he was able to train for and relieve the Senior Operator position once again.[88] After two years, Exxon designated the Senior Operator position at that facility.[89] Cormier continued to hold an Operator position at Exxon.[90]

### Bernell Ballard [91]

Bernell Ballard began working for Exxon in 1974 as an Apprentice Assistant Operator in the Baton Rouge chemical plant.[92] Three years later, he became an Assistant Operator and, at the time of his deposition in 1997, he still held that position.[93] Ballard sought treatment for an alcohol problem in 1987 and participated in Exxon's employee assistance program for alcohol abuse from 1991 to 1993.[94] While at Exxon, he claims to have expressed an

**75.** Id. at 223, Ex. 24 (*Trott* Decl. at ¶ 8).

**76.** Id. at 222 (*Trott* Decl. at ¶ 3).

**77.** Id. at 223 (*Trott* Decl. at ¶¶ 5–6).

**78.** Id. at 224 (*Trott* Decl. at ¶ 9).

**79.** Id. (*Trott* Decl. at ¶ 12).

**80.** Id. at 225 (*Trott* Decl. at ¶ 14).

**81.** Id. at 226 (*Trott* Decl. at ¶ 15).

**82.** The pertinent facts as to Mark Cormier are taken from his declaration submitted with the parties' 1996 cross-motions for summary judgment. See Def.'s App., Ex. 22. The EEOC did not submit a new declaration from Cormier or any other pertinent factual information in connection with the instant motion.

**83.** Def.'s App. at 371, Ex. 22 (*Cormier* Decl at ¶ 2).

**84.** Id.

**85.** Id. at 371–72 (*Cormier* Decl. at ¶ 4).

**86.** Id. at 372 (*Cormier* Decl. at ¶ 6).

**87.** Id.

**88.** Id. at 372–73 (*Cormier* Decl. at ¶¶ 8–9).

**89.** Id. at 373 (*Cormier* Decl. at ¶ 9).

**90.** Id.

**91.** The pertinent facts as to the remaining plaintiffs, Bernell Ballard through John Vallet, are taken from their deposition testimony, excerpts of which are provided by Exxon. The EEOC did not include declarations from these plaintiffs or any other relevant factual information in response to Exxon's motion.

**92.** Id. at 3–4, Ex. 1 (*Ballard* Depo.).

**93.** Id. at 4 (*Ballard* Depo.).

**94.** Id. at 9, 14–15 (*Ballard* Depo.).

interest in a temporary foreman position.[95] Following the adoption of Exxon's policy, Ballard was promoted to temporary positions to help with a short-term needs.[96]

### Gregory Brooks

Gregory Brooks underwent two months of outpatient counseling for his alcohol problem including two AA sessions.[97] He was reassigned in 1989 pursuant to Exxon's policy from the designated position of Tug Captain to the nondesignated position of Safety Coordinator.[98] In his new position, Exxon paid Brooks the same salary and overtime pay that he would have received in the designated tug captain position.[99] He also received merit pay increases following his reassignment.[100] While at Exxon, Brooks received offers of employment from other companies, but he declined.[101]

### Chester Burnett

Chester Burnett worked at Exxon's Baton Rouge plant as an Assistant Operator, occasionally "stepping up" on a temporary basis to the supervisor positions of Process Mechanical Coordinator and Construction Coordinator.[102] In the fall of 1988, he realized he had a substance abuse problem and contacted Exxon's employee assistance program[103] He subsequently underwent a 25 to 30–day inpatient counseling program followed by two years of AA meetings.[104] After his inpatient treatment, Burnett returned to his Assistant Operator job and continued his job duties, including his temporary "step-up" assignments.[105]

### Andrew Dunne

Andrew Dunne retired from Exxon in 1997 after working 27 years.[106] Other than attending a series of court-ordered AA meetings following a DWI, Dunne has sought no other rehabilitative treatment for his drinking problem.[107] While at Exxon, Dunne was an engineer, but in September of 1990, he moved to a forklift operator position in a warehouse.[108] Although it is unclear whether he was reassigned to that position pursuant to Exxon's policy, he had no desire to resume his engineering position at sea.[109] Dunne received an equivalent salary as a forklift operator and was awarded two raises for his efforts.[110] Following his retirement, he worked as an engineer for various shipping companies on a "per-voyage" basis.[111]

### David Gibbs

At the time of his 1997 deposition, David Gibbs worked in Exxon's Chemicals Baytown Olefins Plant as a Mechanical Technician.[112] He occasionally "stepped up" to a first-line supervisor position at which times he received a temporary seven percent pay raise.[113] In 1981, Gibbs voluntarily participated in a 30–day inpatient rehabilitation program, followed by 90 days of AA meetings.[114] After Exxon implemented its policy, Gibbs did not apply for employment at

---

95. Id. at 21 (*Ballard* Depo.).

96. Id.

97. Id. at 53–55, 59, Ex. 3 (*Brooks* Depo.).

98. Id. at 48–49 (*Brooks* Depo.).

99. Id. at 60 (*Brooks* Depo.).

100. Id. at 60–61 (*Brooks* Depo.).

101. Id. at 65–66 (*Brooks* Depo.).

102. Id. at 74A, Ex. 4 (*Burnett* Depo.).

103. Id. at 78–80 (*Burnett* Depo.).

104. Id. at 81, 84 (*Burnett* Depo.).

105. Id. at 85 (*Burnett* Depo.).

106. Id. at 141, Ex. 7 (*Dunne* Depo.).

107. Id. at 146–47 (*Dunne* Depo.).

108. Id. at 149 (*Dunne* Depo.).

109. Id. at 150 (*Dunne* Depo.).

110. Id.

111. Id. at 141–42 (*Dunne* Depo.).

112. Id. at 170–71, Ex. 9 (*Gibbs* Depo.).

113. Id. at 171–73 (*Gibbs* Depo.).

114. Id. at 178–79 (*Gibbs* Depo.).

any other chemical plants in the Baytown area even though over twenty plants were located there.[115]

### Phillip Marquez

In 1987, Phillip Marquez participated in a four-week inpatient rehabilitation program followed by twelve months of periodic aftercare for his substance abuse problem.[116] Pursuant to Exxon's policy, he was reassigned from the position of Drilling Technician to a nondesignated position in the regulatory group.[117] In his new position, Marquez received raises and advances, and he was very happy with the salary treatment.[118] He claims that but for Exxon's policy, he would be a Drilling Superintendent, but he acknowledged that he is not at all limited in securing a Drilling Technician or Drilling Superintendent position at another company located in his area.[119] In fact, he stated that he would have sought employment elsewhere if Exxon had reassigned him to a "demeaning" job, but as it was, he "was given a very good job, a very good opportunity."[120]

### David Sarsfield

David Sarsfield began working for Exxon in approximately 1981.[121] He completed a six to eight-week period of inpatient alcohol rehabilitation along with a two-year aftercare program.[122] In 1990, Sarsfield was reassigned pursuant to Exxon's policy from a designated mechanic position to the nondesignated position of Operator.[123] As an Operator, his salary increased, and in 1995, Exxon promoted him to a Senior Operator position.[124] There are also non-designated positions as a Gang Pusher and Field Foreman which Sarsfield could occupy should any openings arise.[125]

### John Vallet

In 1997, John Vallet had been with Exxon for 24 years.[126] He began his career as a Tank Wagon Driver, but pursuant to Exxon's policy, he was reassigned to a nondesignated position loading and unloading trucks and rail cars at Exxon's Port Allen specialties facility[127] His salary was not affected and, since that time, Vallet has been promoted.[128] He also admitted at his deposition that he could have secured employment with other companies as a Tank Wagon Driver in the Baton Rouge area where he lived[129]

■ Having reviewed the pertinent facts as to each plaintiff, the Court now begins its analysis of whether, under the undisputed facts, Exxon regards the plaintiffs as substantially limited in their ability to work.

#### a. Exxon's Perception

Since the perception of the employer is a key element of the "regarded as" test, the discussion begins by focusing on the record evidence regarding Exxon's general perception of the plaintiffs.

Plaintiffs contend that Exxon regards them as substantially limited in work based solely on Exxon's preclusion of the plaintiffs from safety-sensitive positions due to their substance abuse histories.[130]

---

**115.** Id. at 174–75, 182–83 (*Gibbs* Depo.).

**116.** Id. at 279–80, Ex. 13 (*Marquez* Depo.).

**117.** Id. at 280–82 (*Marquez* Depo.).

**118.** Id. at 280–81 (*Marquez* Depo.).

**119.** Id. at 282 (*Marquez* Depo.).

**120.** Id. at 285 (*Marquez* Depo.).

**121.** Id. at 293, Ex. 14 (*Sarsfield* Depo.).

**122.** Id. at 295–96, 301 (*Sarsfield* Depo.).

**123.** Id. at 299 (*Sarsfield* Depo.).

**124.** Id. at 299–300 (*Sarsfield* Depo.).

**125.** Id. at 305–06 (*Sarsfield* Depo.).

**126.** Id. at 314, Ex. 15 (*Vallet* Depo.).

**127.** Id. at 317A–317B (*Vallet* Depo.).

**128.** Id.

**129.** Id. at 318 (*Vallet* Depo.).

**130.** Aside from its general argument that Exxon's policy perpetuates the "myths, fears and stereotypes" that the ADA was designed to prevent, the EEOC has cited not a single case

Plaintiffs base their argument primarily on the fact that Exxon has designated approximately ten percent of its positions, amounting to approximately 1,500 jobs, which has "denied [the plaintiffs] positions that represented the natural trajectory their careers were taking before Exxon Mobil put up a roadblock."[131] The only evidence offered to support the EEOC's assertion that Exxon regards any of the plaintiffs as impaired is the fact that Exxon designated a number of positions safety-sensitive and transferred or restricted plaintiffs to nondesignated positions. In fact, the affidavits submitted by the EEOC, for the most part, merely show that certain plaintiffs are precluded from holding one, up to four different positions within a line of progression in their chosen careers at Exxon.[132] For the reasons that follow and as set forth in the section to follow, the record evidence does not support a finding that Exxon perceived the plaintiffs to have an impairment that would foreclose them generally from obtaining employment in their field. *See Ellison,* 85 F.3d at 192; *Gupton v. Virginia,* 14 F.3d 203, 205 (4th Cir.), *cert. denied,* 513 U.S. 810, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994); *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 955 (8th Cir.1999)(**"Finding that an individual is substantially limited in his or her ability to work requires a showing that his or her overall employment opportunities are limited.").**

The record evidence does establish that each of the sixteen named plaintiffs was offered or kept in a nondesignated position by Exxon within his field of employment. Exxon kept Bigler in his position as Operator although it reassigned him to a different platform.[133] Corcoran currently works for Exxon as a Process Operator in the Billings, Montana refinery.[134] Exxon reassigned Filippone and Hale from the designated position of flight engineer to the nondesignated position of aircraft mechanic.[135] Hartman was kept in the position of Able Seaman, although he was told that he would not be considered for designated mate positions despite his acquisition of a mate's license.[136] Marque remains in the position of Technical Foreman Construction even though he is not permitted to provide relief work for any field positions.[137] And Trott was reassigned to the nondesignated position of laboratory supervisor, despite being precluded from the jobs of Refinery Manager, Shift Superintendent and Control Supervisor.[138]

Exxon retained Cormier as an Operator after designating the Senior Operator position.[139] As of 1997, Ballard still held his position as Assistant Operator.[140] Exxon reassigned Brooks from the Tug Captain position to the nondesignated position of Safety Coordinator, paying him the same salary and overtime that he would have received as a Tug Captain.[141] Burnett returned to his job duties as an Assistant Operator, including his temporary "step-up" assignments, following his inpatient treatment program.[142] Dunne moved from

---

that supports its contention that Exxon, through the enactment of its policy, regards the plaintiffs as substantially limited in their ability to work. See Pl.'s Resp. at 15–22.

**131.** Pl.'s Resp. at 3, 16.

**132.** Pl.'s Resp. at 17; Pl.'s App. at 205–228, Exs. 18–25.

**133.** Pl.'s App. at 205, Ex. 18 (*Bigler* Decl.).

**134.** Id. at 207, Ex. 19 (*Corcoran* Decl.).

**135.** Id. at 212–13, Ex. 21 (*Filippone* Decl.), 214A, Ex. 21A (*Hale* Decl.).

**136.** Id. at 219, Ex. 22 (*Hartman* Decl. at ¶¶ 13–14, 16).

**137.** Id. at 220, Ex. 23 (*Marque* Decl.).

**138.** Id. at 224–25, Ex. 24 (*Trott* Decl. at ¶¶ 12, 14).

**139.** Def.'s App. at 372–73, Ex. 22 (*Cormier* Decl. at ¶¶ 6–9).

**140.** Id. at 4, Ex. 1 (*Ballard* Depo.).

**141.** Id. at 60, Ex. 3 (*Brooks* Depo.).

**142.** Id. at 85, Ex. 4 (*Burnett* Depo.).

an engineer position to a forklift operator position at the same salary.[143] As of 1997, Gibbs continued working with Exxon as a Mechanical Technician, occasionally "stepping up" to a first-line supervisor position.[144] Exxon reassigned Marquez from the designated position of Drilling Technician to a nondesignated position in the regulatory group, which in Marquez' own words was "a very good job, a very good opportunity."[145] Sarsfield transferred from a mechanic position to a nondesignated Operator position and was subsequently promoted to a Senior Operator position.[146] And Exxon reassigned Vallet, with no change in his salary, from Tank Wagon Driver to a nondesignated position loading and unloading trucks and rail cars at the Port Allen facility.[147]

Retention of an employee in other positions has been found to suggest that an employer does *not* perceive an employee as substantially limited in working. *Gallagher*, 181 F.3d at 656 ("**Our precedents do suggest that the employer's offer of another position in the same class of occupations may disprove an allegation of discrimination based on perception of disability.**"); *Zenor*, 176 F.3d at 861 (**employer did not perceive all persons with drug-related problems as substantially limited in their ability to work as it maintained a policy of returning some employees to work after they underwent rehabilitation programs**); *Sherrod*, 132 F.3d at 1121 (**evidence that employer attempted to place plaintiff in other positions could only permit reasonable jury to conclude that employer believed plaintiff to be qualified for other positions**); *Talk*, 165 F.3d at 1025 (**plaintiff failed to show that employer regarded her as disabled when employer sought positions for plaintiff in other areas and when plaintiff remained with employer**

in position in her field); *Ellison*, 85 F.3d at 193 (**employer offering plaintiff another position with the company precluded fact issue as to whether employer regarded plaintiff as disabled**); *Chandler*, 2 F.3d at 1391 (citing *Elstner v. Southwestern Bell*, 659 F.Supp. 1328 (S.D.Tex.1987), *aff'd*, 863 F.2d 881 (5th Cir.1988))(unpublished opinion)("**Southwestern Bell's perception that [plaintiff] was able to work in other positions was evidenced by its retention of Elstner in a position that did not require climbing.**"); *Thompson*, 121 F.3d at 541 (**employer did not regard plaintiff as substantially limited in broad class of jobs when plaintiff was made aware of another job opportunity with employer and when other possible jobs in plaintiff's industry existed**); *Gupton*, 14 F.3d at 205 (**plaintiff not foreclosed generally from obtaining jobs in her field when employer offered her another position at different facility**); *Quigley v. Austeel Lemont Co., Inc.*, 79 F.Supp.2d 941, 947 (N.D.Ill.2000)(**employer did not regard plaintiff as disabled when it placed plaintiff in another job**); *Mowat–Chesney v. Children's Hosp.*, 917 F.Supp. 746, 752 (D.Colo.1996)(**plaintiff offered other nursing positions precluded a finding that employer perceived her as disabled**); *Ricks v. Xerox Corp.*, 877 F.Supp. 1468, 1476 (D.Kan.1995), *aff'd*, 96 F.3d 1453 (10th Cir.1996)(**plaintiff failed to show employer regarded him as disabled where all evidence indicated that employer believed plaintiff was capable of performing some work and attempted to place plaintiff in suitable position**). Likewise, retaining plaintiffs in positions *within their field* is further proof that Exxon did not perceive plaintiffs' rehabilitation records as foreclosing "generally the type of employment involved." *Ellison*, 85

---

**143.** Id. at 149–50, Ex. 7 (*Dunne* Depo.).

**144.** Id. at 170–71, Ex. 9 (*Gibbs* Depo.).

**145.** Id. at 280–82, 285, Ex. 13 (*Marquez* Depo.).

**146.** Id. at 299–300, Ex. 14 (*Sarsfield* Depo.).

**147.** Id. at 317A–317B, Ex. 15 (*Vallet* Depo.).

F.3d at 192. And although these positions may not have been the jobs of first choice for plaintiffs, this is not determinative. A substantial limitation in working does not necessarily mean prohibited from working a particular job or in the field of one's choice. *See Sutton*, 527 U.S. at 491–92, 119 S.Ct. at 2151; *Bridges*, 92 F.3d at 335 (quoting *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995)).

In sum, Exxon's preclusion of plaintiffs from several designated positions based on their prior participation in rehabilitation programs is insufficient standing alone to establish that Exxon perceived them as disabled. Further, Exxon's retention of them in their fields of expertise constitutes at least some proof that it did *not* regard them as disabled. In fact, Exxon contends that because it retained the plaintiffs in their positions or offered them other work, it did not regard them as disabled, thus the Court need not conduct a detailed analysis of the class or range of jobs from which each plaintiff is precluded.[148] This argument is not without merit as there is a wealth of case law, as reviewed above, supporting the argument that an employer who offers other positions to an employee does not regard that employee as disabled. Indeed, the Fifth Circuit in *Gallagher* expressly noted, "[o]ur precedents do suggest that the employer's offer of another position in the same class of occupations may disprove an allegation of discrimination based on perception of disability." *Gallagher*, 181 F.3d at 656. Nevertheless, in the interest of completeness, the Court will undertake a more thorough analysis,

utilizing the factors set out in the regulations and cases, to determine whether, for the individual plaintiffs, their overall employment opportunities have been substantially limited The Court now turns its attention to those factors.

*b. Broad Range of Jobs/Class of Jobs/Geographic Area*

 As set forth previously, the EEOC's regulations under the ADA provide that an individual is or is regarded as substantially limited in working if he is foreclosed from a class of jobs, or a broad range of jobs in various classes, as compared to the average person having comparable training, skills and abilities, within the geographical area to which the individual has access.[149] See 29 C.F.R. § 1630.2(j)(3). The inability to perform a particular job for a particular employer is not sufficient to establish that an individual is substantially limited in working. *See Sutton*, 527 U.S. at 491–92, 119 S.Ct. at 2151; 29 C.F.R. § 1630.2(j)(3)(i); App. § 1630.2(j). The employee's job expectations and training are also relevant to determining whether they are substantially limited in work. *Webb*, 94 F.3d at 487–88 (citing *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 (6th Cir.1985)); *Welsh*, 977 F.2d at 1419.

In analyzing whether a real or perceived disability is substantially limiting, the statute does not contemplate an "onerous evidentiary showing." 29 C.F.R. § 1630.2(j). What is required is:

the presentation of evidence of general employment demographics and/or recognized occupational classifications that in-

---

148. Def.'s Br. at 13–17.

149. As noted previously, when determining whether an individual is substantially limited in working a court may consider: (1) the geographical area to which the individual has reasonable access; (2) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified be-

cause of the impairment (class of jobs); and/or (3) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).

dicate the approximate number of jobs (*e.g.* "few," "many," "most") from which an individual would be excluded because of an impairment. 29 C.F.R. § 1630, App. § 1630.2(j).

The plaintiffs must present this evidence to sustain their summary judgment burden. *Deas,* 152 F.3d at 481–82; *Sherrod,* 132 F.3d at 1120.

 When evaluating substantial limitation, however, the Court must analyze the individual's employment opportunities *compared to the average person having comparable training, skills and abilities.* See 29 C.F.R. § 1630.2(j)(3)(i); *Welsh,* 977 F.2d at 1419; *Chandler,* 2 F.3d at 1392 (citing *Jasany,* 755 F.2d at 1249). In other words, the critical issue here is not how many jobs have been designated safety-sensitive, but whether plaintiffs, as compared to others with similar training and skills, are significantly more restricted in overall employment opportunities due to Exxon's policy. *See Sutton,* 527 U.S. at 491–92, 119 S.Ct. at 2151 (**emphasizing that if jobs utilizing one's skills are available or if a host of different types of jobs are available, then the individual is not precluded from a substantial class of jobs or a broad range of jobs**); *Murphy,* 527 U.S. at 524–25, 119 S.Ct. at 2139 (**"[I]n light of petitioner's skills and the array of jobs available to petitioner utilizing those skills, petitioner has failed to show that he is regarded as unable to perform a class of jobs."**); *Dutcher,* 53 F.3d at 727 (**plaintiff not substantially limited in class of jobs when she could still perform job as welder, despite serious arm injury, so long as job did not require substantial climbing**); *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 200 (4th Cir.1997)(**plaintiff not substantially limited in working when he could, and did, find comparable employment with another employer**); *Patterson v. Chicago Ass'n For Retarded Citizens,* 150 F.3d 719, 726 (7th Cir.1998)(**plaintiff not substantially limited in working when she**

found employment in her field); *Gutridge v. Clure,* 153 F.3d 898, 901 (8th Cir.1998)(**plaintiff not substantially limited in working when he found comparable employment in his field which did not interfere with his lifting restriction**); *Sinkler,* 209 F.3d at 685–86 (**plaintiff not substantially limited in working when broad range of jobs remained open to her**); *Swain,* 146 F.3d at 858 (**plaintiff not substantially limited in working when she could return to work in her field**); *Zarzycki,* 30 F.Supp.2d at 293 (**no substantial limitation in working when plaintiff found employment in his field**); *Korzeniowski v. ABF Freight Sys., Inc.,* 38 F.Supp.2d 688, 693 (N.D.Ill.1999)(**"It would indeed be a bizarre notion of disability under which [plaintiff] could claim statutory incapacity even while he is holding and performing an essentially equivalent job."**).

#### (1). Broad Range of Jobs

At first glance, the fact that Exxon has excluded plaintiffs from ten percent of the available positions within its organization would appear to be significant. The fact that these jobs run the gamut between, aviation, refinery, truck driving, oil production and ocean-going and inland fleets suggests that a broad range of jobs are implicated by Exxon's policy. Closer examination, however, reveals that the result of the inquiry is not so obvious.

A *broad range* of jobs are those jobs which *do not* require similar skills and training, but from which the plaintiff is also disqualified. 29 C.F.R. § 1630.2(j)(3)(ii)(C). Exxon designated approximately ten percent of available jobs as safety-sensitive.[150] But the number of jobs affected by Exxon's policy, by itself, cannot be a sufficient indicator that the plaintiffs are substantially limited in work. This argument ignores the language of the regulations and the substantial case authority on this issue requiring an individu-

---

**150.** Pl.'s Resp. at 3.

alized approach. And it overlooks the fact, as discussed below, that as to each individual plaintiff, the record evidence indicates that the majority of jobs from which they are precluded by Exxon's policy are jobs they apparently do not seek and for which they are not trained or qualified. Indeed, the EEOC's very complaint is that the plaintiffs have been excluded from a "class of jobs" comprised of one, two, three, or even four positions that "represented the natural trajectory their careers were taking" at Exxon.[151] An employer's preclusion of individuals from jobs that they do not want and for which they are not qualified cannot be said to affect their overall employment opportunities. *See Marschhand v. Norfolk & Western Ry. Co.,* 876 F.Supp. 1528, 1540, *aff'd,* 81 F.3d 714 (7th Cir.1996)(**in finding that plaintiff had failed to show preclusion from overall employment opportunities in public safety field the court stated, "[T]here is no indication that [the plaintiff] has ever had any training for, or expectations of becoming a police officer, fireman or ambulance driver."**).

With regard to the broad range of employment opportunities *within* Exxon, the sixteen named plaintiffs have failed to produce evidence showing that the number of jobs and types of jobs, across a broad range, from which they are now excluded, as compared to similarly trained individuals, is significant. For example, there is no evidence that either Bigler or Cormier was qualified for or desired any designated position other than Senior Operator. Likewise, although Corcoran alleges that he is precluded from holding four field positions "for which [he has] been in training for the past 16 years,"[152] there is no evidence that he could qualify for or desired other designated positions not involving similar skills and training. Similarly, there is no proof that either Filippone or Hale desired or qualified for any position that did not utilize their skills and training

as aircraft mechanics. Furthermore, although Hartman states a desire to be a ship captain, there is no indication in the record that he is qualified for any designated position except those within the mate category utilizing his skills and training.

As for Marque and Trott, both allege that they are foreclosed from three positions *in their area of expertise,* but there is no evidence that either of them was trained for or expected to be placed in designated positions in other areas. And with respect to Ballard, Brooks, Burnett, Dunne, Gibbs, Marquez, Sarsfield, and Vallet, there is no summary judgment proof that any of these plaintiffs qualify for or desire any designated jobs not utilizing their skills and training.

There is also no indication that any of these plaintiffs are excluded from certain non-designated positions within Exxon or the number and types of nondesignated positions. Thus, despite the number of designated positions, plaintiffs have failed to provide any record evidence that their individual employment opportunities as to a broad range of jobs within Exxon are significantly more restricted since the implementation of Exxon's policy than prior to its enforcement. Compared to other individuals with comparable skills and training, the evidence establishes only that Exxon's policy has operated to restrict plaintiffs from those positions within their respective fields mentioned above.

With regard to their overall employability within a broad range *outside* of Exxon, the plaintiffs have wholly failed to show that their employment opportunities within their geographic area are generally foreclosed. In fact, plaintiffs have offered no record proof to support a finding that their job opportunities within the region have been curtailed. To the contrary, they have conceded during this litigation that no other oil companies have adopted an across-

---

**151.** See Pl.'s Resp. at 16–17.

**152.** See Pl.'s App. at 208, Ex. 19 (*Corcoran* Decl. at ¶ 5).

the-board policy similar to Exxon's.[153] And the record proof establishes that Hale, Hartman and Dunne, since leaving Exxon's employ, have each held positions that are virtually identical to the positions which they are precluded from holding at Exxon.[154] Brooks declined offers of employment from other companies while working for Exxon, and Marquez and Vallet both admitted that they could find work with other companies in their area. performing jobs they are excluded from at Exxon.[155] Again, the record evidence established only that Exxon's policy has restricted plaintiffs' real work opportunities only in those limited areas within the Exxon organization. In short, none of the plaintiffs have produced sufficient evidence to establish that they are precluded from a *broad range of jobs* due to Exxon's policy. Nor have they produced enough proof to raise a material fact question on this issue.

*(2) Class of Jobs*

With regard to a *class of jobs*, each of the plaintiffs have also failed in their summary judgment proof on this issue. A class of jobs are those jobs which require knowledge, skills and training *similar* to the job from which the plaintiff has been disqualified. 29 C.F.R. § 1630.2(j)(3)(ii)(B). In defining a class of jobs, pertinent factors include the plaintiffs' job expectations and training, and the number of jobs within the geographical area utilizing similar training and skills. 29 C.F.R. § 1630.2(j)(3)(ii)(B); *Webb*, 94 F.3d at 487–88 (citing *Jasany*, 755 F.2d at 1249). As with the other elements of their case, it is the plaintiffs who bear the burden of proving that they are precluded from a class of jobs. *Deas*, 152 F.3d at 481–82; *Sherrod*, 132 F.3d at 1120; *Dutcher*, 53 F.3d at 726 n. 13 (**in opposing summary judgment plaintiff failed to provide evidence that he was precluded from class of jobs**).

This circuit has held, and the Supreme Court has reinforced the notion that the term "class of jobs" is broader than simply the individual's chosen field of employment. *Bridges*, 92 F.3d at 335–36 (**holding that firefighting and associated municipal paramedics or EMTs who must also serve as backup firefighters too narrow a field to describe "class of jobs"**); *See also Sutton*, 527 U.S. at 491–92, 119 S.Ct. at 2151. And, as noted above, the fact that the employer has retained the employee in the same position or has offered the employee alternative positions remains a significant factor in determining whether the employer perceives the employee as substantially limited in a class of jobs. *Gallagher*, 181 F.3d at 656; *Zenor*, 176 F.3d at 861. The relevant inquiry is "whether the particular impairment constitutes for the particular person a significant barrier to employment." *Webb*, 94 F.3d at 488 (other citations omitted).

Here, the evidence fails to show that any of the sixteen named plaintiffs are substantially limited in a class of jobs. Both Bigler and Cormier are precluded from holding or relieving in the sole position of Senior Operator. Similarly, the proof regarding Ballard, Brooks, Burnett, Dunne, Gibbs, Marquez, Sarsfield, and Vallet fails to show that they are excluded from more than one particular job due to Exxon's

---

**153.** See Pl.'s Mot. for Summ. J., filed August 9, 1996 at ¶¶ 76–77 and Pl.'s Br. in Support of Mot. for Summ. J. at Ex. 1 (*Vogel* Decl. at ¶¶ 2–4)(included at Def.'s App. at 405–06, 458). In her Declaration describing the policies of other companies, Senior Trial Attorney for the EEOC Carla J. Vogel avers: "Of the policies received by the Commission in response to its subpoenas, none contain provisions which automatically bar employees who have a history of rehabilitation for alcohol abuse from performing safety sensitive posi-

tions within the company." See Def.'s App. at 458.

**154.** Def.'s App. at 190–93, Ex. 10 (*Hale* Depo.), 212–13, Ex. 11 (*Hartman* Depo.), 141–42, Ex. 7 (*Dunne* Depo.).

**155.** Id. at 65–66, Ex. 3 (*Brooks* Depo.), 282, Ex. 13 (*Marquez* Depo.), 318, Ex. 15 (*Vallet* Depo.).

policy. "[T]o be substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Murphy*, 527 U.S. at 2132–33, 119 S.Ct. at 2138; *See Sutton*, 527 U.S. at 491–92, 119 S.Ct. at 2151. The remaining six plaintiffs, Corcoran, Filippone, Hale, Hartman, Marque, and Trott, are simply restricted from occupying three or four positions in their chosen career field at Exxon. "Evidence of disqualification from a single position or narrow range of jobs will not support a finding that an individual is substantially limited from the major life activity of working." *Talk*, 165 F.3d at 1025; *See also Bridges*, 92 F.3d at 334 ("A 'broad range' [of jobs] implies **more than two job types.**"). Even if there are several positions in each of these job categories within Exxon, that does not change the analysis. The range of jobs available within each position "need not be numerically insignificant" to still constitute a narrow range of jobs. *Chandler*, 2 F.3d at 1391 n. 29 (27,000 **police officer positions still only a narrow range of jobs**).

Perhaps more importantly, Exxon has produced uncontroverted evidence that all of the employees affected by its policy were either retained in their current positions, or were reassigned to other nondesignated positions, based on their skills and qualifications.[156] Exxon's uncontroverted proof further establishes its efforts to keep reassigned employees at a comparable pay scale, at least up to a period of five years.[157] In sum, each of the plaintiffs still have or had jobs utilizing their training and skills available to them at Exxon. For example, Bigler is currently employed with Exxon as an I & E technician, and he acknowledged that he could move into a nondesignated senior I & E job.[158] In fact, he performs relief work for senior I & E positions and nondesignated Operator positions.[159] Further, despite the fact that some Senior Operator positions are designated, there are other Operator and Senior Operator positions which are not designated.[160]

Corcoran works at Exxon as a Process Operator and in June 1997, after his substance abuse treatment, he was moved from a "B" operator to an "A" operator with an increase in pay.[161] Exxon reassigned both Filippone and Hale from the designated position of flight engineer to the nondesignated position of aircraft mechanic, a position utilizing both plaintiffs' skills and training.[162] Likewise, Hartman was retained in his position by Exxon as an Able Seaman.[163] He also acknowledged that not all of the positions at Seariver utilizing a mate's license were designated, although those positions were not part of his chosen career path.[164] Nonetheless, a "class of jobs" is not limited to one's cho-

---

**156.** Def.'s App. at 343–46, Ex. 17 (*Rouse* Depo.), 553, Ex. 32 (*Rouse* Aff. at ¶ 14), 556–57, Ex. 33 (*Cahill* Aff. at ¶¶ 5–8), 570–71, Ex. 34 (*Rosa* Aff. at ¶¶ 5–7). The EEOC complains about the affidavit of Mr. Rosa, claiming that he was never identified by Exxon and that he has no personal knowledge concerning the facts in his affidavit. Pl.'s Resp. at 16. As Exxon counters in its reply. Exxon identified Mr. Rosa in its initial disclosures in 1995 as a person who has relevant knowledge concerning Exxon's policy. Def.'s Reply at 14–15 and Supplemental App. at 581, Ex. 1. Further, Mr. Rosa's affidavit alleges that he has personal knowledge of the facts contained therein, and it otherwise appears to be competent summary judgment evidence. Accordingly, the Court will consider the affidavit in its analysis.

**157.** Def.'s App. at 343–46, Ex. 17 (*Rouse* Depo.), 557, Ex. 33 (*Cahill* Aff. at ¶ 6–7), 570, Ex. 34 (*Rosa* Aff. at ¶ 6).

**158.** Def.'s App. at 37, Ex. 2 (*Bigler* Depo.).

**159.** Id. at 37A (*Bigler* Depo.).

**160.** Id. at 37 (*Bigler* Depo.).

**161.** Id. at 97–97A, Ex. 5 (*Corcoran* Depo.).

**162.** Id. at 159–60, Ex. 8 (*Filippone* Depo.), 190–93, 197, Ex. 10 (*Hale* Depo.).

**163.** Pl.'s App., Ex. 22 (*Hartman* Decl.).

**164.** Def.'s App., at 227, Ex. 11 (*Hartman* Decl.).

sen career path. *Bridges,* 92 F.3d at 335–36.

Marque is currently employed with Exxon in the nondesignated position of Technical Foreman Construction.[165] Following the implementation of Exxon's policy, Exxon offered him a Materials Analyst position in 1990 and a regulatory position in 1992.[166] Even assuming, as Marque claims, that Exxon offered the regulatory position in bad faith,[167] he merely complains that the Materials Analyst position was outside of his desired career path.[168] More importantly, Marque conceded at his deposition that, although he is precluded from the three positions of Field Superintendent, Senior Field Superintendent and Field Foreman, he does not know if there are nondesignated Field Superintendent positions, how many there are, or what percentage are nondesignated.[169] The undisputed proof establishes that not all Field Superintendent or Field Foreman jobs were designated.[170]

With respect to Trott, he was reassigned pursuant to Exxon's policy from the position of Control Supervisor to Laboratory Supervisor, and he later became a Section Supervisor in fuels process operations.[171] Although Trott complains that his reassignment to lab supervisor resulted in less frequent pay raises,[172] the proof shows that his overall salary with Exxon has increased since his reassignment.[173] Additionally, while Trott is excluded from the three designated positions of Refinery Manager, Shift Superintendent, and Control Supervisor, the undisputed evidence establishes that not all Control Supervisor and Shift Superintendent positions are designated, and that Trott is otherwise qualified to perform numerous jobs within Exxon.[174]

Both Cormier and Sarsfield continued working at Exxon in Operator positions.[175] Sarsfield could also occupy the nondesignated positions of Gang Pusher and Field Foreman if openings arose.[176] Ballard and Burnett also stayed in their positions as Assistant Operators, with Burnett continuing to perform "step-up" assignments.[177] Similarly, Gibbs stayed in his Mechanical Technician position.[178]

Brooks was reassigned to a Safety Coordinator position, making the same salary and overtime as his former Tug Captain position.[179] Likewise, Dunne moved to a forklift operator job without any decrease in pay and subsequently received two raises for his efforts.[180] Marquez was reassigned to a position in the regulatory group, which he termed "a very good job, a very good opportunity."[181] And finally,

165. Pl.'s App. at 220, Ex. 23 (*Marque* Decl.).

166. Id.; Def.'s App. at 263–64, Ex. 12 (*Marque* Depo.).

167. Pl.'s App. at 220–21, Ex. 23 (*Marque* Decl.).

168. Id. at 220 (*Marque* Decl.); Def.'s App. at 263–64, Ex. 12 (*Marque* Depo.).

169. Def.'s App. at 266, Ex. 12 (*Marque* Depo.).

170. Id. at 572, Ex. 34 (*Rosa* Aff. at ¶ 10).

171. Pl.'s App. at 224, Ex. 24 (*Trott* Decl. at ¶ 12); Def.'s App. at 571–72, Ex. 34 (*Rosa* Aff. at ¶ 9).

172. Pl.'s App. at 225, Ex. 24 (*Trott* Decl. at ¶ 14).

173. Def.'s App. at 572, Ex. 34 (*Rosa* Aff. at ¶ 9).

174. Id.

175. Id. at 372–73, Ex. 22 (*Cormier* Decl. at ¶ 6–9), 299, Ex. 14 (*Sarsfield* Depo.).

176. Id. at 305–06 (*Sarsfield* Depo.).

177. Id. at 4, Ex. 1 (*Ballard* Depo.), 85, Ex. 4 (*Burnett* Depo.).

178. Id. at 170–71, Ex. 9 (*Gibbs* Depo.).

179. Id. at 60, Ex. 3 (*Brooks* Depo.).

180. Id. at 149–50, Ex. 7 (*Dunne* Depo.).

181. Id. at 280–82, 285, Ex. 13 (*Marquez* Depo.).

Valler was transferred from his Tank Wagon Driver job to a loading position at Exxon's Port Allen facility and subsequently promoted.[182]

To be perfectly clear, what plaintiffs have failed to do on this summary judgment motion is to carry their burden of providing the Court with evidence of how Exxon's policy constitutes a *substantial* limitation on their ability to perform a class of jobs within Exxon. For example, even though some of the plaintiffs have shown that they are precluded from a few designated positions, there is nothing to show the number and types of jobs that utilize similar skills and training and which are still available to the plaintiffs within their respective geographic regions. The evidence regarding three of Exxon's positions, the Senior Operator, Field Foreman and mechanic, illustrates the point. Neither Bigler nor Cormier can hold Senior Operator positions at their specific locations, but not all of these positions are designated. In fact, Sarsfield was promoted from Operator to a nondesignated Senior Operator job. Similarly, Marque is precluded from a Field Foreman position, but Sarsfield acknowledged that he could occupy a nondesignated Field Foreman position. And while Sarsfield is precluded from a designated mechanic position, Filippone and Hale were reassigned to nondesignated mechanic positions. In other words, the plaintiffs have failed to show which jobs utilizing their skills and training are nondesignated, and thus available, in their respective geographic areas as compared to the designated jobs. As previously explained and as recent case authority emphasizes, the critical issue here is not the number of jobs that have been designated safety-sensitive, but whether the plaintiffs, as compared to others with

similar training and skills, are significantly more restricted in overall employment opportunities due to Exxon's policy.[183] *See Sutton,* 527 U.S. at 492–93, 119 S.Ct. at 2151 (**emphasizing that if jobs utilizing one's skills are available or if a host of different types of jobs are available, then the individual is not precluded from a substantial class of jobs or a broad range of jobs**); *Murphy,* 527 U.S. at 524–25, 119 S.Ct. at 2139 ("**[I]n light of petitioner's skills and the array of jobs available to petitioner utilizing those skills, petitioner has failed to show that he is regarded as unable to perform a class of jobs.**"); *Dutcher,* 53 F.3d at 727 (**plaintiff not substantially limited in class of jobs when she could still perform job as welder, despite serious arm injury, so long as job did not require substantial climbing**). The statute does not contemplate an "onerous evidentiary showing." 29 C.F.R.App. § 1630.2(j). What is required is:

> the presentation of evidence of general employment demographics and/or recognized occupational classifications that indicate the approximate number of jobs (*e.g.* "few," "many," "most") from which an individual would be excluded because of an impairment.

29 C.F.R. § 1630, App. § 1630.2(j). Despite the fact that the plaintiffs are excluded from some jobs, given Exxon's proof that other jobs are available for each plaintiff utilizing their skills and training, and absent some controverting proof in that regard, the plaintiffs cannot establish, and no reasonable jury could conclude, that Exxon regards them as substantially limited in their ability to work. *See Deas,* 152 F.3d at 482 (**affirming summary judgment for employer because plaintiff failed to produce evidence from which a**

---

**182.** Id. at 317A–317B, Ex. 15 (*Valler* Depo.).

**183.** It is this principle which has been clarified in the case authority since 1996 that leads this Court to a different resolution than in its 1996 recommendation that Hartman, Trott, and Marque survive summary judgment. See Recommendation at 41–43. Viewing this principle in conjunction with the additional discovery and evidence that has been proffered with this motion, this Court finds that an alternative recommendation as to these plaintiffs is warranted.

rational jury could conclude that employer perceived plaintiff as substantially limited in her ability to work generally); *Sherrod*, 132 F.3d at 1120–21 (same). As the Supreme Court stated in *Sutton:*

> When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.

*Sutton*, 527 U.S. at 492–93, 119 S.Ct. at 2151. Simply put, in this summary judgment context, the plaintiffs have failed to meet that standard.

With regard to the class of jobs outside Exxon, the plaintiffs have also failed in their proof to show a substantial limitation on working. As previously noted, it is undisputed that no other oil companies have adopted an across-the-board policy similar to Exxon's.[184] In fact, Hale, Hartman and Dunne have each held positions outside of Exxon that are virtually identical to the jobs they are precluded from holding at Exxon.[185] Hale, Bigler and Filippone also acknowledged that there are several opportunities available outside of Exxon for persons with their skills and experience.[186] Likewise, Corcoran, Marque, and Gibbs all testified that other companies are located in their respective geographical regions where, presumably, each could find other employment.[187] Although Trott retired from Exxon in 1999, there is no evidence that he could not find employment outside of Exxon utilizing his training and skills. Brooks re-ceived but declined employment offers from other companies while he was working at Exxon.[188] And both Marquez and Vallet acknowledged that they could secure otherwise designated positions with other companies in their geographical areas.[189] In short, the record evidence fails to establish that the plaintiffs are substantially limited in a class of jobs outside of Exxon.

In conclusion, the Court finds that the plaintiffs have failed to meet their burden to create a genuine fact issue regarding whether they are "disabled" within the meaning of the ADA Accordingly, this Court will recommend that Exxon's motion for summary judgment be **GRANTED.** However, one final issue which is by no means insignificant is the EEOC's assertion that it represents at least 60 claimants and that, even if summary judgment is appropriate against those sixteen specifically named individuals addressed in these findings, then the EEOC "reserves the right .. to present evidence regarding *any and all* employees covered under the Act who were affected by the policy ...;" thus, it should be allowed to proceed to trial on the remaining plaintiffs' claims.[190] The Court disagrees. First, the EEOC has cited no authority to support this "right," and the Court has found none directly on point. Second, both the EEOC and Exxon were put on notice by the District Court that this motion would address the sole issue of whether *any* of the plaintiffs are "disabled" under the ADA.[191] And as dis-

**184.** See Pl.'s Mot. for Summ. J., filed August 9, 1996 at ¶¶ 76–77 and Pl.'s Br. in Support of Mot. for Summ. J. at Ex. 1 (*Vogel* Decl. at ¶¶ 2–4)(included at Def.'s App. at 405–06, 458).

**185.** Def.'s App. at 190–93, Ex. 10 (*Hale* Depo.), 212–13, Ex. 11 (*Hartman* Depo.), 141–42, Ex. 7 (*Dunne* Depo.).

**186.** Def.'s App., at 39–40, Ex. 2 (*Bigler* Depo.), 160, Ex. 8 (*Filippone* Depo.), 194, Ex. 10 (*Hale* Depo.).

**187.** Id. at 103, Ex. 5 (*Corcoran* Depo.), 257, Ex. 12 (*Marque* Depo.), 174–75, 182–83 (*Gibbs* Depo.).

**188.** Id. at 65–66, Ex. 3 (*Brooks* Depo.).

**189.** Id. at 282, Ex. 13 (*Marquez* Depo.), 318, Ex. 15 (*Vallet* Depo.).

**190.** Pl.'s Resp. at 7.

**191.** See Def.'s Supplemental App. in Support of Def.'s Reply at 607–621, Ex. 2 (Transcript of May 25, 2000 hearing at 24–38); See also Order, filed May 30, 2000 and Jt. Status Report, filed April 10, 2000 at 7–9.

cussed in great detail above, Exxon has offered competent summary judgment evidence applying to all of the plaintiffs generally and to those specifically named plaintiffs that none of them were regarded as disabled by Exxon because they were each either retained in their current positions or were reassigned to other nondesignated positions, based on their skills and qualifications, and at a comparable pay scale.[192] This evidence, the Court finds, is sufficient to shift the burden to the EEOC to go beyond the pleadings and to produce evidence to establish the existence of an element essential to its case, and on which it bears the burden of proof at trial; i.e., that the plaintiffs are disabled. *See Russ v. Int'l Paper Co.*, 943 F.2d 589, 591–93 (5th Cir.1991)(discussing the summary judgment burdens enunciated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The Court, therefore, assumes that the EEOC, having notice of the disability issue to be addressed in this motion and being faced with Exxon's summary judgment proof, has brought forth all of its disability evidence. Because the EEOC's proffered evidence (or lack thereof) is insufficient to raise a genuine issue for trial as to whether any of the plaintiffs are disabled, they should not be allowed to proceed to trial on their ADA claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **recommends** that Exxon's Motion for Summary Judgment be **GRANTED**.

**SO RECOMMENDED.**

---

**192.** See supra, pp. 1006–08, 1012–13; See also Def.'s App. at 343–46, Ex. 17 (*Rouse* Depo.), 553, Ex. 32 (*Rouse* Aff. at ¶ 14), 556– 57, Ex. 33 (*Cahill* Aff. at ¶¶ 5–8), 570–71, Ex. 34 (*Rosa* Aff. at ¶¶ 5–7).